IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HUNTLY DANTZLER and SUSAN DANTZLER,  *Plaintiffs*,  v.  JOE HINDMAN, and HUNTER WESTBROOK  *Defendants*. | Case No. 1:15-CV-1084  JURY TRIAL DEMANDED |

## COMPLAINT

COME NOW the Plaintiffs, Huntly Dantzler and Susan Dantzler, by and through the undersigned attorney, and allege and aver as follows:

### Introduction

1. This action seeks to vindicate the Plaintiffs rights under the Constitution of the United States and the laws of the State of Texas. The Plaintiffs were deprived of those rights by the Defendants, who engaged in an invasion and search of the Plaintiffs' home without reasonable grounds and against the will and protestations of the Plaintiffs. Additionally, the Defendants effected a seizure of one of the Plaintiffs without sufficient cause and using unreasonable and excessive force, causing significant personal injury and damage to the Plaintiffs. For these deprivations, the Plaintiffs seek relief under 42 U.S.C. § 1983 and the laws of the State of Texas.

### Jurisdiction and Venue

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343, as it is an action seeking redress under the laws and statutes of the United States for the deprivation of rights secured by the Constitution and laws of the United States.

3.     This Court has supplemental jurisdiction over the claims arising under the law of the State of Texas under 28 U.S.C. § 1367 because these claims are so related to the claims over which the court has original jurisdiction that they form part of the same case or controversy.

4.     Venue properly lies in the Western District of Texas under 28 U.S.C. § 1391(b) as all the Defendants reside within the Western District of Texas and a substantial part of the events giving rise to this action occurred within this District.  This action is properly filed in the Austin Division of said District as the events at issue occurred within Gillespie County, Texas.

**Parties**

5.     Plaintiff Huntly Dantzler is an adult male citizen of the United States who resides at 16784 West U.S. Highway 290, Harper, Texas.

6.     Plaintiff Susan Dantzler is an adult female citizen of the United States who resides at 16784 West U.S. Highway 290, Harper, Texas, and is the wife of Plaintiff Huntly Dantzler.

7.     Defendant Joe Hindman is adult male employed as a law enforcement officer at the rank of Sergeant with the Gillespie County, Texas, Sheriff's Office.  In all respects set forth in this Complaint, Defendant Hindman acted under color of the laws of the State of Texas.  Defendant Hindman is sued in this case in his individual and official capacities.

8.     Defendant Hunter Westbrook is an adult male employed as a law enforcement officer at the rank of Deputy with the Gillespie County, Texas, Sheriff's Office.  In all respects set

forth in this Complaint, Defendant Westbrook acted under color of the laws of the State of Texas. Defendant Hindman is sued in this case in his individual and official capacities.

## Facts

9. On May 3, 2015, the Gillespie County, Texas, Sheriff's Office received an early-morning call from an unnamed person reporting that a female was in danger.

10. The information from the anonymous caller was related to Defendant Westbrook at approximately 5:54 a.m. on May 3.

11. Defendant Westbrook was told by Sheriff's Office dispatch that an anonymous call reported that Huntly Dantzler, Jr., the Plaintiff's son, was at a bar in the City of Fredericksburg, Texas, and placed two white pills in the drink of an unidentified female. The caller reported that the female became extremely intoxicated after consuming the drink and that Huntly Dantzler, Jr., left the bar with the female for an unknown location. Westbrook was told by dispatch that the anonymous caller reported he had witnessed Huntly Dantzler, Jr., do this before and the caller expressed concern for the female's safety.

12. Westbrook also was told that the caller refused to provide his name when asked to identify himself and that the anonymous caller indicated the incident occurred two hours before calling.

13. Westbrook then contacted Defendant Hindman and the two decided they would conduct a "welfare check" on the female at Huntly Dantzler, Jr.'s, residence, hoping they would find the female at the residence.

14. Defendants Westbrook and Hindman proceeded in separate vehicles to 16784 West U.S. Highway 290, in Harper, Texas, which is the residence of the Plaintiffs Huntly Dantzler and Susan Dantzler.

15. When Defendants Westbrook and Hindman arrived at the address at approximately 6:30 a.m., they turned off of Highway 290 and onto a driveway that leads to the Plaintiff's residence.

16. After exiting their vehicles, Defendants Westbrook and Hindman walked across the curtilage of the Plaintiffs property toward a barn located about 20 yards to the north and east of the Plaintiffs' residence. After searching around the curtilage of the Plaintiffs' property, Defendant Westbrook began knocking on the southeast side door of the Plaintiffs' home.

17. The Plaintiffs were inside their home asleep at the time Defendants Westbrook and Hindman arrived and were awoken at approximately 6:35 a.m. by the pounding on their door. Huntly Dantzler, Jr., was not in the home at that time. Plaintiff Huntly Dantzler arose and looked out the window of the home and saw the police vehicles in the driveway and exited the door on the southwest side of the home and went out on the porch located at that door.

18. Defendants Westbrook and Hindman heard Plaintiff Huntly Dantzler call out and came to the door where Huntly Dantzler had exited. Defendant Hindman stepped up the stairs and onto the porch where Huntly Dantzler was standing. By this time, Susan Dantzler also had arisen and was at the door with her husband.

19. Defendant Hindman stated that the officers wanted to speak with the Plaintiffs' son Huntly Dantzler, Jr., and stated that they had received a call reporting that their son was with a female, that the female's health could be in jeopardy, and they wanted to go into the Plaintiffs' home to conduct a "welfare check."

20.     The Plaintiffs informed the Defendants that Huntly Dantzler was not there in the home and that the Defendants should check elsewhere if they wanted to determine the welfare of the female.

21.     The Defendants refused to accept the Plaintiffs' denial of access to the home and told the Plaintiffs that they needed to search the home themselves and asserted that they had exigent circumstances for conducting the search.

22.     The Plaintiffs stood by their decision not to allow the Defendants to search their home and told the Defendants that they needed to get a warrant if they wanted to search the home.

23.     The Defendants continued to press the Plaintiffs to allow them to enter and search the home, asserting that exigent circumstances gave them the legal authority to conduct a search of the home.

24.     The Plaintiffs again told the Defendants that neither Huntly Dantzler, Jr., nor any female was within the home and offered to look for the officers and see if anyone was in the home. However, the Defendants refused this offer asserting that the Defendants had to conduct the search themselves.

25.     At one point, Defendant Hindman told the Plaintiffs that all he needed to do was check where Huntly Dantzler, Jr., sleeps and that would be enough of a search for him. The Plaintiffs explained again that their son was not in the house.

26.     The Defendants continued for 15 minutes to insist that they had the legal right and authority to conduct a search of the Plaintiff's home and made no indication that they would leave and attempt to obtain a warrant for the search. During this entire time, the Plaintiffs refused to allow the Defendants to enter their home.

27. When it became apparent that the Plaintiffs would not allow the Defendants access to the home, the Defendants decided to physically seize Plaintiff Huntly Dantzler and remove him from the doorway and porch. At approximately 6:50 a.m., Defendant Hindman physically took hold of Plaintiff Huntly Dantzler and placed handcuffs on him and led him down the steps to Defendant Westbrook who led Plaintiff Huntly Dantzler onto the driveway.

28. Defendant Hindman then continued to speak to Plaintiff Susan Dantzler, insisting that he had a right to enter and search the property. Susan Dantzler continued to tell the Defendants that their son was not inside the home.

29. As Defendant Hindman continued to demand access to the home, Plaintiff Huntly Dantzler, still in handcuffs, began walking away from the porch and door where his wife and Defendant Hindman were standing. Huntly Dantzler walked a few feet along the driveway and then onto a grassy yard next to the home, at all times moving away from the home.

30. Defendant Westbrook told Huntly Dantzler to stop walking and to "stay right there," but Huntly Dantzler continued to walk at a slow pace away from the home.

31. Because his order was not being complied with, Defendant Westbrook walked up behind Huntly Dantzler, grabbed him by the arms, pulled him around and began pushing him back toward the driveway and porch.

32. As he was being held and pushed, Huntly Dantzler told Defendant Westbrook to take his hands off him, and pulled out of the grasp of Defendant Westbrook.

33. Defendant Westbrook then grabbed the handcuffed Huntly Dantzler, threw him to the ground and fell on top of Huntly Dantzler. Defendant Westbrook told Huntly Dantzler that he was "not going to disobey me." Defendant Westbrook then pulled Huntly Dantzler up off the ground and back toward the porch.

6

34. The Defendants continued to assert that they were entitled to search the Plaintiffs residence that they were past the point of having to justify the search to the Plaintiffs and that they were "doing it."

35. Susan Dantzler offered to allow the Defendants to look in the window of their son's room to see if he was there, but Defendant Hindman refused this offer insisting they be allowed in the home. Susan Dantzler pointed out that Defendant Hindman previously asserted he just needed to see where the son sleeps.

36. After approximately 25 minutes of being harangued by the Defendants to allow them to enter the home, being told by the Defendants that they had a legal right to search the home, after seeing her husband handcuffed, led away and thrown to the ground for refusing to grant the Defendants access to the home, Susan Dantzler told Defendant Hindman that he could enter the home but that it was against her will.

37. Although Defendant Hindman had previously stated that he just needed to see where the Plaintiffs' son sleeps, upon entering the home Hindman conducted a search of the entire home, including the Plaintiffs' bedroom and bathroom, all over the objections of Susan Dantzler.

38. As the Plaintiffs had told the Defendants, neither Huntly Dantzler, Jr., nor any female, nor anyone else was in the home.

39. After conducting a search of the home, the Defendants released Huntly Dantzler from the handcuffs and left the residence.

40. As a result of the handcuffing and the seizure effected by the Defendants, Huntly Dantzler suffered severe injuries to his wrists and back, resulting in severe bleeding. Once the Defendants had left, Huntly Dantzler was required to seek and obtain emergency medical treatment for the wounds suffered at the hands of the Defendants.

41.     As a result of the Defendants early-morning invasion of the Plaintiffs' residence and assault of Huntly Dantzler, the Plaintiffs also suffered and continue to suffer severe and extreme emotional trauma and distress.

**First Cause of Action**

**Deprivation of Fourth Amendment Rights – 42 U.S.C. § 1983**

42.     The Plaintiffs re-allege and incorporate by reference the allegations in ¶¶ 1-40.

43.     The Defendants, acting under a claim of right and without the voluntary consent of the Plaintiffs, conducted a search of the Plaintiffs' residence without probable cause and that was otherwise unreasonable, thereby depriving the Plaintiffs' of their rights under the Fourth Amendment to the United States Constitution.

44.     The Defendants effected a seizure of the Plaintiff Huntly Dantzler which was without probable or other sufficient cause and was otherwise unreasonable, thereby depriving Plaintiff Huntly Dantzler of his rights under the Fourth Amendment to the Constitution.

45      In the course of executing the seizure of Plaintiff Huntly Dantzler, the Defendants used excessive and unreasonable force which resulted in severe physical and emotional injuries to Plaintiff Huntly Dantzler and Susan Dantzler, thereby depriving the Plaintiffs of their rights under the Fourth Amendment to the United States Constitution.

46.     In conducting the searches and seizures of the Plaintiffs and their property, the Defendants acted under color of the law of the State of Texas.

47.     The Defendants acted with reckless and callous indifference in depriving the Plaintiffs of their rights under the Fourth Amendment

48.     As a result of the deprivations of the Plaintiffs' Fourth Amendment rights, they have suffered damages for which they are entitled to relief under 42 U.S.C. § 1983.

### Second Cause of Action

### False Arrest

49.     The Plaintiffs re-allege and incorporate by reference the allegations of ¶¶ 1-48.

50.     The Defendants effected a willful detention of the Plaintiffs against the consent of the Plaintiffs and without authority of law and otherwise wrongfully interfered with the freedom of the Plaintiffs.

51.     As a result of the wrongful conduct of the Defendants, the Plaintiffs have suffered damages for which they are entitled to relief under the law of the State of Texas.

### Third Cause of Action

### Assault and Battery

52.     The Plaintiffs re-allege and incorporate by reference the allegations of ¶¶ 1-51.

53.     In effecting the unlawful seizure of Plaintiff Huntly Dantzler, Defendant Westbrook willfully, intentionally and with malice made harmful and offensive contact with the person of Plaintiff Huntly Dantzler and thereby committed assault and battery.

54.     In effecting the unlawful seizure of Plaintiff Huntly Dantzler, Defendant Westbrook, employed force that was unnecessary, unreasonable and was greater than reasonably necessary to accomplish the purpose for which the Defendants had seized Plaintiff Huntly Dantzler, and did so willfully, intentionally and maliciously.

55. As a result of the wrongful conduct of the Defendants, the Plaintiff Huntly Dantzler have suffered damages for which he is entitled to relief under the law of the State of Texas.

WHEREFORE the Plaintiffs request that judgment be entered against the Defendants as follows:

a) That this Court award the Plaintiffs pecuniary and compensatory for the damage and harm suffered by the Plaintiffs in an amount to be determined at trial;

b) That this Court award the Plaintiffs punitive damages in an amount to be determined at trial;

c) That this Court award the Plaintiffs attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other state or federal law authorizing the Plaintiffs to recover such fees and costs; and

d) That this Court order any and all such other and further relief deemed proper under the facts and law.

The Plaintiffs hereby demand a jury trial.

Dated:  December 2, 2015                    RESPECTFULLY SUBMITTED,


Jerri Lynn Ward
Garlo Ward, P.C.
907 Ranch Road 620 S., Ste. 101
Lakeway, TX 78734
Tel: 512.302.1103
Fax: 512.302.5236

Participating Attorney for
THE RUTHERFORD INSTITUTE

>By:  */s/ Jerri Lynn Ward*
>      Jerri Lynn Ward
>      Attorney in Charge
>      State Bar No. 20844200
>      Email:jward@garloward.com
>
>ATTORNEYS FOR PLAINTIFFS