IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUNTLY DANTZLER AND SUSAN DANTZLER | § § § | |
| PLAINTIFFS, | § § | |
| V. | § | CIVIL ACTION NO. 1:15-CV-01084-DAE |
| | § | |
| JOE HINDMAN AND HUNTER WESTBROOK | § § § | |
| DEFENDANTS. | § § § | |

### DEFENDANTS SGT. HINDMAN AND DEPUTY WESTBROOK'S MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID EZRA:**

**NOW COMES DEPUTY SGT. JOE HINDMAN** and **DEPUTY HUNTER WESTBROOK,** Defendants in the above entitled and numbered cause, and pursuant to Rule 56, Federal Rules of Civil Procedure, files this their Motion for Summary Judgment and in support thereof would respectfully show unto the Court the following:

**I.**

Defendants **SGT. HINDMAN** and **DEPUTY WESTBROOK** would show unto the Court that there is no genuine issue as to any material fact and that they are entitled to judgment, as a matter of law.

**II.**

Defendants **SGT. HINDMAN** and **DEPUTY WESTBROOK** incorporate into their Motion for Summary Judgment for all purposes the following exhibits:

    (1)    Exhibit A  -  DVD Dash Cam of Incident[1];

    (2)    Exhibit B  -  Deposition of Deputy Sgt. Joe Hindman;

    (3)    Exhibit C  -  Deposition of Deputy Hunter Westbrook;

    (4)    Exhibit D  -  Deposition of Sheriff Buddy Mills;

    (5)    Exhibit E  -  Gillespie County Incident Report; and

    (6)    Exhibit F  -  Affidavit of Expert Albert Ortiz.

The above Exhibits A and F are hereby incorporated by reference for all purposes.

### III.

The case at bar concerns a welfare check by Defendants Sgt. Hindman and Deputy Westbrook on May 3, 2015 in Gillespie County, Texas. An unidentified male called the Gillespie County Sheriff's Office during the early morning hours of May 3, 2015 and related to Dispatch that Huntly Dantzler, Jr. had been drinking in a bar in the City of Fredericksburg with an unidentified female. Huntly Dantzler, Jr. was seen dropping two pills into the drink of the unidentified female wherein she became highly intoxicated and left with Huntly Dantzler, Jr. The caller further stated that he had seen Huntly Dantzler, Jr. do this on other occasions to other women. The caller was fearful for the female's safety.

Defendant Sgt. Hindman met with Deputy Westbrook and they proceeded to the Huntly Dantzler residence in Harper, Texas which is located in Gillespie County. When the deputies arrived at the Dantzler residence, they ran a license plate check on the vehicles and determined that Huntley Dantzler, Jr.'s vehicle was present on the property. Deputies Hindman and Westbrook knocked on the door of the Dantzler Residence and spoke with Huntly Dantzler, Sr. and Susan Dantzler. Both Deputies related to the Dantzler's the exigent circumstances for conducting the welfare check made the basis of

---

[1] Gillespie County Dash Cam Video is in DVD format and will be traditionally filed with the Clerk's Office. The DVD has two separate screens.

this incident. (*See, Exhibit A – DVD Dash Cam Video*). Huntly Dantzler Sr. and Susan Dantzler both refused the deputies' request at a welfare check unless a warrant was produced. The deputies explained that a warrant was not needed under the exigent circumstances. However, Huntly Dantzler Sr. became agitated and postured himself against the deputies. When Huntly Dantzler Sr. attempted to reenter his home, he was detained by Sgt. Hindman for officer safety. Plaintiff Dantzler Sr. was handcuffed without incident and escorted down the porch by Hindman to the custody of Deputy Westbrook in front of the residence. Defendant Deputy Westbrook informed Dantzler Sr. to stand in front of the vehicle which was in the driveway next to the porch. Plaintiff Dantzler began walking off on to the yard and Deputy Westbrook continued to command him to stop and come back in the area of the front porch. Deputy Westbrook grabbed Plaintiff Huntly Dantzler's arm and Dantzler pulled away and used his shoulder in an aggressive manner toward Deputy Westbrook. Deputy Westbrook took Dantzler Sr. to the ground using only the necessary amount of reasonable force to control the actions of Dantzler, Sr. Deputy Westbrook assisted Dantzler Sr. back on his feet and he remained in front of the vehicle without further incident. (*See, Exhibit A – DVD Dash Cam Video; Exhibit B – Deposition of Deputy Hindman, pp. 54-57; Exhibit C – Deposition of Deputy Hunter Westbrook, pp. 50-52*).

Plaintiff Susan Dantzler decided to allow Sgt. Hindman to conduct the welfare check but refused Deputy Westbrook's entrance into the residence. Sgt. Hindman conducted the welfare check without incident and the handcuffs were removed from Huntly Dantzler, Sr. Huntly Dantzler Sr. was bleeding from his wrists and EMS was called to the scene. However, EMS was cancelled when the Dantzler's informed that they did not want EMS assistance and simply wanted the deputies off their property.

Later that day, an individual by the name of Nina Lewis called and spoke with Deputy Westbrook stating that she had been in the camper trailer in the back of the residence with Huntly Dantzler, Jr.  She further informed Deputy Westbrook that the Dantzler's evicted her from the property due to the incident made the basis of this lawsuit.

Defendants Sgt. Hindman and Deputy Westbrook assert that at all times made the basis of Plaintiff's complaint that they were acting in their discretionary capacity as law enforcement officers for Gillespie County pursuant to their discretionary authority and acted at all times in good faith.  Defendants assert that they were entitled to the protective shroud of qualified immunity, as a matter of law.   Defendants further assert that their actions were reasonable based on the exigent circumstances of conducting a welfare check of a female who was thought to be in medical danger.

## IV.
## UNDISPUTED FACTS

Defendants **SGT. HINDMAN** and **DEPUTY WESTBROOK** assert unto the Court the following facts are undisputed:

(1) On May 3, 2015, the Gillespie County Sheriff's Office received an anonymous call stating that a male, identified as Huntly Dantzler, Jr. was drinking in an unidentified bar in the City of Fredericksburg and placed two white pills in an unidentified female's drink.  The caller stated that after the female drank the drink that contained the two pills, she became extremely intoxicated and then left with Huntly Dantzler, Jr.  The caller further advised that he had witnessed Huntly Dantzler, Jr. do this type of thing to females before concerning placing pills in their drink.  *(See, Exhibit B – Deposition of Deputy Sgt. Joe Hindman, p. 39; Exhibit C – Deposition of Deputy Hunter Westbrook, p. 26; 39-44; Exhibit E – Gillespie County Sheriff Incident Report);*

(2) On May 3, 2015 at approximately 0545 hours, Deputy Westbrook received a call from Dispatch with the related information concerning the welfare of an unidentified female that had been drugged by Huntly Dantzler, Jr. Deputy Westbrook contacted Deputy Sgt. Hindman and they both responded to conduct a welfare check on the unidentified female at Huntly Dantzler, Jr.'s residence located in Harper, Texas. *(See, Exhibit B – Deposition of Deputy Sgt. Joe Hindman, p. 39-40; Exhibit C – Deposition of Deputy Hunter Westbrook, p. 26; 39-44; Exhibit E – Gillespie County Sheriff Incident Report);*

(3) At approximately 0633 hours, Defendants **SGT. HINDMAN** and **DEPUTY WESTBROOK** arrived at the Dantzler Residence in Harper, Texas located in Gillespie County. Defendant Sgt. Hindman conducted license plate check on a truck at the residence which came back registered to Huntly Dantzler, Jr. *(See, Exhibit B – Deposition of Deputy Sgt. Joe Hindman, p. 45; Exhibit C – Deposition of Deputy Hunter Westbrook, p. 28);*

(4) Defendant Deputy Sgt. Hindman and Deputy Westbrook related to Plaintiffs Huntly Dantzler (Sr.) and Susan Dantzler the exigent circumstances for conducting the welfare check made the basis of the suit. The best evidence of this encounter is depicted in the DVD Dash Cam Video. *(See, Exhibit A – DVD Dash Cam Video; Exhibit B – Deposition of Deputy Sgt. Joe Hindman, p. 43-54; Exhibit C – Deposition of Deputy Hunter Westbrook, p. 39-44);*

(5) Plaintiff Huntly Dantzler Sr., became agitated and postured himself against the deputies. When Huntly Dantzler Sr. attempted to reenter his home, he was detained by Sgt. Hindman. Plaintiff Huntly Dantzler Sr. was handcuffed and escorted down the porch steps by Sgt. Hindman to the custody of Deputy Westbrook. *(See, Exhibit B – Deposition of Deputy Sgt. Joe Hindman, p. 53-54; Exhibit C – Deposition of Deputy Hunter Westbrook, p. 50-52);*

(6) Defendant Deputy Westbrook informed Plaintiff Huntly Dantzler, Sr. to stand in front of the vehicle which was in the driveway next to the porch. Plaintiff Dantzler began walking off into the yard and Deputy Westbrook continued to command him to stop and come back to the area in front of the vehicle. Deputy Westbrook grabbed Plaintiff Dantzler's arm and Dantzler pulled away and used his shoulder in an offensive manner. Deputy Westbrook took Dantzler Sr. to the ground using only the necessary amount of reasonable force to control the actions of Dantzler Sr. Dantzler Sr. was assisted back onto his feet and remained in front of the vehicle without further incident. *(See, Exhibit A – DVD Dash Cam of Incident; Exhibit B – Deposition of Deputy Sgt. Joe Hindman, pp. 54-63;*

> *Exhibit C – Deposition of Deputy Hunter Westbrook, pp. 50-55; Exhibit D – Deposition of Sheriff Buddy Mills, pp. 30-31; Exhibit F – Affidavit of Expert Albert Ortiz);*

(7) Plaintiff Susan Dantzler ultimately allowed Defendant Sgt. Hindman to conduct the welfare check, but informed Defendant Westbrook that he was not allowed inside. The welfare check took place without incident. *(See, Exhibit A – DVD Dash Cam of Incident; Exhibit B – Deposition of Deputy Sgt. Joe Hindman, pp. 66-67;)*;

(8) Plaintiffs Huntly Dantzler Sr. and Susan Dantzler never informed Defendants Sgt. Hindman and Deputy Westbrook, that their son was with the unknown female in a camper on their property. Subsequent to the incident, Nina Lewis informed the officers that she was kicked off the Dantzler property due to the incident in question. *(See, Exhibit C – Deposition of Deputy Hunter Westbrook, pp. 56-63);*

(9) Plaintiff Huntly Dantzler refused medical treatment at the scene, wherein his wrists were lacerated. *(See, Exhibit A –Deposition of Deputy Sgt. Joe Hindman, pp. 71-73)*

## V.

Plaintiffs Huntly Dantzler Sr. and Susan Dantzler have brought claims under 42 U.S.C. §1983 alleging unlawful search/seizure and excessive force against Huntly Dantzler Sr. under the Fourth Amendment and state tort claims of false arrest and assault and battery. Defendants Sgt. Hindman and Deputy Westbrook have affirmatively raised their affirmative defense of qualified immunity and official immunity for Plaintiffs claims.

## VI.
### SEARCH/SEIZURE

In ***Brigham City, Utah v. Stewart***, 547 U.S. 398 (2006), the Court held that police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury. In ***Stewart***, Officers responded to a loud party at 3:00 a.m. and arrived at the house in question. The Officers heard shouting inside the residence and saw two juveniles

drinking beer in the back yard.  Upon entering the yard, they saw through the screen door and windows an altercation in the kitchen between four adults and a juvenile.  The Officers arrested respondents and charged them with contributing to the delinquency of a minor and related offenses.  The trial court granted the motion to suppress all evidence obtained on the warrant list entry into the home under the Fourth Amendment.  The Utah Court of Appeals affirmed and the Utah Supreme Court held that the entry did not fall within the exigent circumstances exemption of the Fourth Amendment.  On grant of certiorari, the United States Supreme Court held that police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury. *Id.* at 398.

> Because the Fourth Amendment's ultimate touchstone is "reasonableness", the warrant requirement is subject to certain exceptions.  One exigency obviating the requirement for a warrant, is the need to render emergency assistance to occupants of private property who are seriously injured or threatened with such injury. ***Michigan v. Fisher***, 558 U.S. 45, 47 (2009); ***Mincey v. Arizona***, 437 U.S. 385, 392 (1978).  Law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. ***City & County of San Francisco v. Sheehan***, ___ U.S. ___ 135 S.Ct. 1765, 1774 (2015).  This "emergency aid exception" does not depend on the officer's subjective intent or the seriousness of any crime they are investigating when the emergency arises.  It requires only an objectively reasonable basis for believing that a person within the house is in need of immediate aid.  To determine whether exigent circumstances justify warrantless entry, the court must focus upon the reasonableness of the officer's actions in light of the circumstances of the scene as it would appear to a reasonable person standing in the shoes of the officer.

*Linicomn v. City of Dallas*, 2015 W.L. 5664265 at *7 (N.D. Tex. Sept. 25, 2015)(Fitzwater, C.J.); *United States v. Thompson*, 2012 W.L. 1161609, at *2 (N.D. Tex. Apr. 9, 2012)(Fitzwater, C.J.).  If reasonable minds could differ, the Courts should not second guess the judgment of experienced law enforcement officers concerning the risks of a particular situation.  *United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997); *Linicomn v. City of Dallas*, 2015 W.L. 5664265 at *7 (N.D. Tex. Sept. 25, 2015)(Fitzwater, C.J.).

In the case at bar, Defendant Deputies Sgt. Hindman and Westbrook had the following relevant information:

- An anonymous caller made a call to the Gillespie County Dispatch fearing for the safety of an unknown female.

- The caller stated that Huntly Dantzler, Jr. was at a bar in Fredericksburg with a female and the caller had seen Huntly Dantzler, Jr. place two pills in the female's drink.

- The female accompanying Huntly Dantzler Jr. became extremely intoxicated subsequent to having the two pills placed in her drink.

- The female, accompanying Huntly Dantzler, Jr. left the bar with him in an extremely intoxicated state.

- The caller informed dispatch that he had seen Huntly Dantzler Jr. do this on other occasions to women.

- The caller feared for the safety of the unidentified woman and informed the Gillespie County Sheriff's Department.

Defendant Deputies Sgt. Hindman and Westbrook, with this knowledge in hand, went to the residence of Huntly Dantzler, Jr. where he resided with his parents.  Huntly Dantzler's Jr.'s vehicle was present on the property which gave the Defendant Deputies reasonable belief to conduct a welfare check of the unknown female in question.  Defendants assert that Exhibit A – DVD of the Dash Cam Video, gives the following timeline:

### *Timeline*

        0639 hours  -   Deputies Arrive.

        0649 hours  -   Huntly Dantzler is placed in handcuffs and detained;

        0650 hours  -   Huntly Dantzler, Sr. is taken to the ground.

        0653 hours  -   Deputy Sgt. Hindman enters the house to conduct a welfare check.

        6057 hours  -   EMS is cancelled.

Defendants assert that Exhibit A is the best evidence of what transpired on the date of May 3, 2015 made the basis of this complaint. Defendants assert that at all times they were acting in the course and scope of their employment as Gillespie County Sheriff's deputies pursuant to their discretionary capacity to conduct a welfare check and acted at all times in good faith and therefore, are entitled to good faith, qualified immunity.

Defendant Deputies assert that their actions were reasonable under the exigent circumstances exception to determine whether or not the female was injured or threatened by injury. *(See, Exhibit D – Deposition of Sheriff Buddy Mills, pp. 30-31; 41-42; Exhibit E – Gillespie County Incident Reports and Exhibit F – Affidavit of Expert Albert Ortiz.).* Ultimately, Plaintiff Susan Dantzler did consent to the search by Deputy Sgt. Hindman but refused entry of Deputy Westbrook. This request was complied with by the Deputies.

This entire incident could have been avoided by Plaintiffs' by simply informing the officers that Huntly Dantzler, Jr. was in the camper behind the house with the unknown female. These facts became known when Nina Lewis, the unknown female, called the Gillespie County Sheriff's Office and told Deputy Westbrook that she had been in the camper on the property, but had been evicted by the Dantzlers, subsequent to the

incident.  In an analogous case, the U.S. Supreme Court in **Ryburn v. Huff**, ____ U.S. ____, 132 S.Ct. 987 (2012), found that the officers in question were entitled to qualified immunity for their reasonable belief in entering a residence where they concluded there was an imminent threat of violence.  The Court reversed the Ninth Circuit's denial of qualified immunity to the officers and reasoned that judges should be cautious about second guessing a police officer's assessment made on the scene, of the danger presented by a particular situation.  The Court concluded that reasonable officers in the Petitioner's position could have come to the conclusion that the Fourth Amendment permitted them to enter the Huff residence since there was an objectively reasonable basis for fearing violence was imminent.  In the case at bar, Defendants Sgt. Hindman and Deputy Westbrook, assert that they are entitled to qualified immunity since they had a reasonable belief that a female was in danger at the Dantzler residence from a totality of the circumstances. **Ryburn v. Huff**, ____ U.S. ____, 132 S.Ct. 987, 991 (2012).

## VII.
## EXCESSIVE FORCE

Defendants Sgt. Hindman and Deputy Westbrook have affirmatively raised their defense of qualified immunity to Plaintiff's claims of excessive force under 42 U.S.C. §1983.  Excessive force claims are necessarily fact intensive and depend on the facts and circumstances of each particular case.  **Deville v. Marcantel**, 567 F.3d 156, 167 (5th Cir. 2009).  The analysis is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.  **Graham v. Connor**, 490 U.S. 386, 397 (1989).  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than the 20/20 vision of hindsight…the calculus of reasonableness must

embody allowance for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation. *Id.* at 396-397.

To overcome the Defendants' claim of qualified immunity on Plaintiff's claim of excessive force, Plaintiff Huntly Dantzler must show:

(1) An injury;
(2) Which resulted directly and only from the use of force that was clearly excessive; and,
(3) The excessiveness of which was clearly unreasonable.

***Ontiveros v. City of Rosenberg***, 564 F.3d 379, 382 (5th Cir. 2009).

Even in the summary judgment analysis, qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. ***Hunter v. Bryant***, 502 U.S. 224, 228 (1991).

In the case at bar, Exhibit A – the Gillespie County Dash Cam Video (Traditionally filed with the Court) of the incident in question, is the best evidence of what occurred on the date of the incident in question. Defendant, Deputy Sgt. Hindman, detained Plaintiff Huntly Dantzler Sr., at such time as he was attempting to go back inside the house, for officer safety. *(See, Exhibit B – Deposition of Deputy Sgt. Hindman, pp. 43-45).* Plaintiff Huntly Dantzler, Sr. was escorted down the porch where Defendant Deputy Westbrook informed Huntly Dantzler, Sr. to remain in front of a parked truck. (*See, Exhibit C – Deposition of Deputy Westbrook, pp. 50-52*). Plaintiff Dantzler, Sr. did not comply with the lawful orders of Deputy Westbrook and began wandering off in the front lawn. After numerous commands were given to Dantzler, Sr., Deputy Westbrook took Plaintiff Dantzler Sr. to the ground, using only the necessary amount of reasonable force. Deputy Westbrook was able to gain control and assisted Dantzler, Sr. back on his

feet. Defendants Sgt. Hindman and Deputy Westbrook assert that their use of force was objectively reasonable, as a matter of law. *City of Pearlman v. City of Ft. Worth*, 400 F.Appx. 956 (5th Cir. 2010)(not published).

The case of *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012), is analogous to the case at bar. In *Poole*, the plaintiff motorist brought a civil rights action against city police officers alleging excessive force and his arrest following a traffic stop. The Plaintiff was ordered to exit his truck and given a field sobriety test which he passed. However, during the course of plaintiff's exchange with police officers, the plaintiff became increasingly sarcastic. The dash cam recorder mounted on one of the officer's patrol cars, reported most of the events. When one of the officers instructed the plaintiff to turn around, an altercation broke out between the plaintiff and two officers. One of the officers repeated used his Taser on the plaintiff and the other officer then flipped the plaintiff on the ground. Plaintiff Poole suffered permanent injuries to his left arm and hand as a result of the incident. The Court of Appeals affirmed the trial court's granting of the Defendant Officers entitlement to summary judgment reasoning that the use of force by the officers arresting Poole was not objectively excessive or clearly unreasonable. *Id.* at 629.

Similar cases involving the use of force and take down maneuvers include *Rakestrau v. Neustrum*, 213 W.L. 1452030 W.D. La. Apr. 8, 2013 (not published), wherein plaintiff went into a fighting stance against the officer and was tackled on the ground and tasered. Subsequent to being tasered, the plaintiff was unresponsive. The Court held the officer involved was entitled to qualified immunity for the initial takedown and first tasing, but the fact issue remained as to the second taser episode,

which resulted in plaintiff's death. *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012).

## VII.
## STATE CLAIMS OF FALSE ARREST
## AND ASSAULT AND BATTERY

Defendants Sgt. Hindman and Deputy Westbrook assert that Plaintiffs' state law claims of false arrest and assault and battery are barred under the election of remedies under the TEXAS TORT CLAIMS ACT, Chapter 101, Section 101.106(f). *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011). This Court has recognized the Election of Remedies bar in *Tipps v. McGraw*, 945 F.Supp.2d 761, 768 (W.D. Tex. 2013), wherein the Court held that the Election of Remedies bar precluded suit against the governmental employee. The Texas Supreme Court removed all doubt regarding the election of remedies bar in *Molina v. Alvarado*, 463 S.W.3d 867, 871 (Tex. 2015). Defendants Sgt. Hindman and Deputy Westbrook assert unto the Court that Plaintiffs' claims under false arrest and assault and battery are barred under the TEXAS TORT CLAIMS ACT, Chapter 101, Section 101.106(f). *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).

**WHEREFORE, PREMISES CONSIDERED** Defendants Sgt. Hindman and Deputy Westbrook pray that their motion for summary judgment will be in all things granted, that Plaintiffs' lawsuit be dismissed against it and for such other and further relief as it may show itself justly entitled.

                      Respectfully submitted,

                      **LAW OFFICES OF CHARLES S. FRIGERIO**
                      A Professional Corporation
                      Riverview Towers
                      111 Soledad, Suite 840
                      San Antonio, Texas 78205
                      (210) 271-7877
                      (210) 271-0602 Telefax


            BY:    /s/ Charles S. Frigerio
                      CHARLES S. FRIGERIO
                      SBN: 07477500

                      HECTOR X. SAENZ
                      SBN: 17514850
                      ATTORNEYS FOR DEFENDANTS
                      **SGT. JOE HINDMAN** and
                      **DEPUTY HUNTER WESTBROOK**


## CERTIFICATE OF SERVICE

       I hereby certify that on the 16th day of January, 2016, a true and correct copy of the above and foregoing Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system Notification and by traditional means will be forwarded to the ECF Participant as follows:

Ms. Jerri Lynn Ward
Attorney at Law
900 Ranch Road 620 South C-206
Lakeway, Texas 78734


                      /s/ Charles S. Frigerio
                      CHARLES S. FRIGERIO