## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **HUNTLY DANTZLER and** | ) | |
| **SUSAN DANTZLER,** | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:15-cv-01084-DAE** |
| | ) | |
| **JOE HINDMAN, and** | ) | |
| **HUNTER WESTBROOK** | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs, Huntly Dantzler and Susan Dantzler, and submit pursuant to Local Rule 7(e) their Response and supporting exhibits[1] in Opposition to the Defendants' Motion for Summary Judgment [Dkt. # 21].

In the early-morning hours of May 3, 2015, Defendants Joe Hindman and Hunter Westbrook, two officers of the Gillespie County (Texas) Sheriff's Office, arrived at the residence of Plaintiffs Huntly and Susan Dantzler. The Defendants were intent on conducting a search of the Plaintiffs home because of an anonymous report the Sheriff's Office received accusing the Plaintiff's son of drugging a woman at a bar. That report was false. When the Defendants were told by the Plaintiffs that no other persons were in their home, the Defendants persisted in their demand to search the home asserting a need to determine the welfare of the woman. Indeed, the Defendants decided to act on the anonymous report, a report that did <u>not</u> indicate that the woman

---

[1] Plaintiff's Exh. A is the Affidavit of Huntly Dantzler. Plaintiffs' Exh. B is the Affidavit of Susan Dantzler. Plaintiffs' Exh. C is the video of the incident captured by Susan Dantzler on her cell phone.

was in the Plaintiffs' home, and chose to disbelieve the statements of the Plaintiffs that no other persons were in their home even though the Plaintiffs are upstanding citizens and were in the best position to know if there was anyone in their home in need of emergency aid.  And in furtherance of their demand to invade the Plaintiffs' home, the Defendants seized and handcuffed Plaintiff Huntly Dantzler, an act that eventually resulted in Huntly Dantzler suffering severe injuries to his wrists.

These circumstances demonstrate a patent violation of the Fourth Amendment, as the Defendants had no reasonable basis for searching the Plaintiffs' home or for restraining Huntly Dantzler in furtherance of that search.  It is well-established that uncorroborated anonymous reports are presumptively unreliable and provide no justification for a search or seizure, particularly when the officers conducting the search have reliable information contradicting any belief they have based on the anonymous tip.  Because a reasonable officer would have known this, the Defendants' motion for summary judgment on the Plaintiffs' claims under 42 U.S.C. § 1983 for deprivations of their Fourth Amendment rights must be denied.[2]

Plaintiffs Huntly and Susan Dantzler incorporate into their Response to Defendants' Motion for Summary Judgement for all purposes the following exhibits:

(1) Exhibit A—Affidavit of Huntly Dantzler with attached photographs;
(2) Exhibit B---Affidavit of Susan Dantzler
(3) Exhibit C--- Cell phone video taken by Susan Dantzler—filed physically with the Clerk's office.

### STATEMENT OF FACTS

The Defendants are correct that the facts of this case, as disclosed by video and audio recordings of the incident captured by a dash cam [Dkt. # 21-2] and captured by Plaintiff Susan

---

[2] Based on current Texas state law, the Plaintiffs agree that dismissal of the state law claims against the Defendants in the Second and Third Causes of Action are subject to dismissal.  Pursuant to Tex. Civ. Prac. & Rem. Code Ann. §101.106(f), the Plaintiffs will file an Amended Complaint substituting Gillespie County as the Defendant on those claims.

Dantzler on her cell phone (Plaintiffs' Exh. C), are largely undisputed.  On May 3, 2015, the Gillespie County Sheriff's Office received an anonymous call reporting that Huntly Dantzler, Jr., was at an unidentified bar and had placed pills in the drink of an unidentified female.  The caller reported that the female became very intoxicated and left the bar with Huntly Dantzler, Jr.

Based on this call, the Defendants went to the Plaintiffs' home, arriving at approximately 6:30 a.m. (Plaintiff's Exh. A, p. 1). After awakening the Plaintiffs, who came to the porch of the home, the Defendants asserted they needed to search the Plaintiffs' residence to determine if either Huntly Dantzler, Jr., or a woman in need of assistance were in the residence.  The Plaintiffs refused to allow the Defendants to search the house, told the Defendants that no other persons were in their home (Plaintiffs' Exh. A, p. 2; Plaintiffs' Exh. B, p. 2), and advised that they would allow a search only if the Defendants produced a warrant.  The Defendants asserted repeatedly that they did not need a warrant because "exigent circumstances" allowed them to search the home.

Approximately 15 minutes after the Defendants arrived, Plaintiff Huntly Dantzler attempted to go back into his home.  The Defendants told Huntly Dantzler he was not allowed to go back inside and at that point seized Huntly Dantzler, put him in handcuffs, and led him off the porch (Plaintiffs' Exh. A, p. 3).  Defendant Hindman continued to speak with Plaintiff Susan Dantzler, who remained on the porch and continued to refuse to allow a search of the home.  When Huntly Dantzler began walking into the yard, he was ordered by Defendant Westbrook not to move away and to come back.  Huntly Dantzler did not obey Westbrook's order, and Westbrook went over and grabbed Huntly Dantzler's arm.  When Huntly Dantzler pulled out of Westbrook's grasp, Westbrook grabbed Huntly Dantzler around the neck and threw him to the ground [Dkt. #21-2, at 6:50 a.m. mark of video] (Plaintiffs' Exh. A, pp. 3-4).  Huntly Dantzler hit his head on the ground and the impact slashed his wrists and cut his back (Plaintiffs' Exh. A, p. 4)

After seeing her husband thrown to the ground and after it became clear the Defendants would take any steps they deemed necessary to search her home, Plaintiff Susan Dantzler allowed Defendant Westbrook to enter her home and search.  The search disclosed no other persons in the home nor any indication of a person in need of emergency aid.

**Disputed Facts**:  The Plaintiffs specifically deny that the following facts set forth in Defendants' statement of "Undisputed Facts" [Dkt. # 21, pp. 4-6] are undisputed:

1)  The Plaintiffs' dispute and deny that Huntly Dantzler "became agitated and postured himself against the deputies." [Dkt. 21, p.5, no. 5].  The dash cam video of the incident indicates that Huntly Dantzler was calmly but firmly interacting with the Defendants and asserting his Fourth Amendment rights [Dkt. # 21-2, at 6:37 to 6:49 a.m. mark of video].

2)  The Plaintiffs dispute and deny that after Defendant Westbrook grabbed Huntly Dantzler's arm, Huntly Dantzler "used his shoulder in an offensive manner." [Dkt. # 21, p. 5 no.6]. The dash cam video and cell phone video of Susan Dantzler show that any motion by Huntly Dantzler was solely defensive and for the purpose of removing his arm from Defendant Westbrook's grasp and was not in any way offensive action toward Defendant Westbrook [Dkt. #21-2 at 6:50 a.m. mark of video] (Exh. C at 0:59 mark of video).

3)  The Plaintiffs dispute and deny that Defendant Westbrook used only "the necessary amount of reasonable force to control the actions of" Huntly Dantzler [Dkt. # 21, p. 5 no.6]. Whether the force was reasonable is a legal conclusion and not an undisputed fact.

**Undisputed Facts**:  The Plaintiffs contend that the following facts are undisputed:

1)  At the time the Defendants came to the Plaintiffs property and demanded to search Plaintiffs' home, the Defendants knew that the report accusing Huntly Dantzler, Jr., of drugging a woman had come from an anonymous caller [Dkt. #21-3, p. 22; Dkt. # 21-6, pp. 2, 5].

---

2)  At several points during the discussion between the Defendants and the Plaintiffs at the Plaintiffs' porch, the Plaintiffs informed the Defendants that there were no other persons present in their home at that time (Plaintiffs' Exh. A, p. 2; Plaintiffs' Exh. B, p. 2; Plaintiffs' Exh. C at 1:46 mark of video).

3)  Plaintiff Huntly Dantzler submitted to the handcuffing by the Defendants without resistance [Dkt. # #21-2 at 6:49 a.m. mark of video] (Plaintiffs' Exh. C at 0:05 mark of video).

4)  When Defendant Hindman remarked that he heard movement from within the Dantzler's home, Plaintiff Susan Dantzler explained that this was because she had just hit the door frame with her elbow and that there were cats in the house (Plaintiffs' Exh. C at 2:29 mark of video).

5)  During the entire time the Defendants were at the Plaintiffs home, the Plaintiffs were not aware that a woman was with their son elsewhere on the property (Plaintiff's Exh. A, pp 4-5; Plaintiffs' Exh. B, p. 3).

6)  The woman who was with Huntly Dantzler, Jr., Nina Lewis, on the property had accompanied him there willingly and was at no time in any physical distress or danger.  Nina Lewis told a county dispatcher that she was safe and that Huntly Dantzler, Jr., had saved her from a bad situation (Plaintiffs' Exh. A, p. 5 ).

7)  Plaintiff Huntly Dantzler suffered severe injuries to his wrists and was bleeding profusely as a result of the restraint and force employed by the Defendants upon him.   These injuries resulted in the Defendants calling EMS to the property.  Huntly Dantzler refused this assistance but did go to the hospital that day because of the injuries he sustained (Plaintiffs' Exh. A, pp. 4-6 and attached photographs).

**ARGUMENT**

**I.      SUMMARY JUDGMENT STANDARD --**Summary judgment is proper only when the evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Baeza v. Becker*, No. 14-cv-659, 2015 WL 6127190, at *3 (W.D. Tex. 2015). The court must draw all reasonable inferences and construe evidence in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**II.     PLAINTIFFS' SEARCH AND SEIZURE CLAIM**--The Plaintiffs' First Cause of Action seeks relief under 42 U.S.C. § 1983 for the warrantless and unreasonable search of their home by the Defendants, alleging a violation of their rights under the Fourth Amendment [Dkt. # 1, ¶ 43].  In order to obtain relief under § 1983, a plaintiff must demonstrate (1) a violation of a federal constitutional or statutory right, and (2) that the violation was committed by an individual acting under the color of state law.  *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).  The Defendants' summary judgment motion does not assert a lack of evidence on the second element, but argues only that the undisputed facts in this case demonstrate that their conduct at the Plaintiffs' residence in the early morning on May 3, 2015, did not violate the Fourth Amendment rights of the Plaintiffs.  Additionally, the Defendants claim that even if their conduct violated the Fourth Amendment, they did not violate clearly established law in doing so and are protected from liability by qualified immunity.

The Defendants' summary judgment motion must be denied because their decision to enter and search the Plaintiffs' home against the Plaintiffs' will and to seize and handcuff Plaintiff Huntly Dantzler in furtherance of that search were based solely upon an uncorroborated

anonymous tip that was contradicted by information provided by the Plaintiffs.  Warrantless searches of a home are presumptively unreasonable under the Fourth Amendment, *Brigham City, Utah*, 547 U.S. 398, 403 (2006), and the burden rests with law enforcement to demonstrate that some exception to the warrant requirement justifies a warrantless search.  *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007).  Although the Defendants rely upon the decision in *Brigham City, Utah v. Stuart, supra,* that police may make a warrantless entry of a home in order to render emergency assistance to an occupant, the Court there recognized that in order for this exception to the Fourth Amendment to apply, the officers must have "an objectively reasonable basis for belief" that someone is inside the home who requires immediate assistance.  *Id.* at 406. *See also Ryburn v. Huff*, 132 S. Ct. 987, 990 (2012) (police may enter a home without a warrant if they have "an objectively reasonable basis for believing that an occupant is . . . imminently threatened with [serious injury].")

In order for an invasion of a home by police to be justified under the emergency aid exception to the Fourth Amendment, the police must show that the evidence known to them at the time of the entry would objectively indicate to a reasonable officer that a person in distress and in need of immediate assistance is in the home.  *United States v. Troop*, 514 F.3d 405, 410 (5th Cir. 2008).  In *Troop*, the Fifth Circuit held that border agents violated the Fourth Amendment by entering a home to find suspected illegal aliens even though the agents asserted that they feared the aliens may need medical attention because they had been traveling in hot weather for an extended time.  The emergency exception did not justify the entry because the agents could point to no evidence corroborating their suspicion that the aliens were in need of immediate medical attention, and so the court ruled the agents had conducted an unreasonable search under the Fourth Amendment.  *Id. Troop* illustrates the principle that police do not have *carte blanche* to enter and

search a resident by invoking the emergency exception or a desire to conduct a "welfare check." "Courts must still determine whether the actions of the law enforcement officer who entered without a warrant were objectively reasonable," and "must still ensure that, at the time the officer acted, there was reliable information of an 'urgent, ongoing emergency.'" *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1132 (5th Cir. 2014).

No reliable information supported the Defendants' search of the Plaintiffs' home because they relied solely upon an uncorroborated anonymous tip.  In *Florida v. J.L.*, 529 U.S. 266 (1999), the Supreme Court made clear that anonymous tips, standing alone, are to be given little credence and should not be relied upon by police as grounds for undertaking actions with Fourth Amendment implications.  "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, *see Adams v.* Williams, 407 U.S. 143, 146 (1972), 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity[.]'" *J.L.*, 529 U.S. at 270 (quoting *Alabama v. White*, 496 U.S. 325, 329 (1990)).  The *J.L.* Court unanimously held that an anonymous report that a black male standing at a particular corner wearing a plaid shirt had a gun did not give police reasonable suspicion to stop and frisk J.L., even though he was black, was standing at the reported place and was wearing a plaid shirt.  As the Fifth Circuit has remarked, "[t]he Supreme Court has evinced a strong distrust of anonymous tips."  *United States v. Martinez*, 486 F.3d 855, 862 (5th Cir. 2007).

Thus, cases have held that searches based upon an anonymous and uncorroborated report of an emergency are unreasonable and violate the Fourth Amendment.  In *Kerman v. City of New York*, 261 F.3d 229 (2d Cir. 2001), the court held that an anonymous 911 call reporting that there was a mentally ill man at a particular address who was off his medication, acting crazy and possibly in possession of a gun did not authorize police to make a warrantless entry at the address under the

emergency aid exception.  The court there pointed out that plaintiff's privacy interest was much greater than the interest at issue in *J.L.* because of the anonymous tip was the basis for invading the sanctity of a home, which is historically given stringent Fourth Amendment protection.  "Based on the absence of evidence in the record to corroborate the 911 call and the protections afforded to private dwellings under the Fourth Amendment, we find that the officers' warrantless entry into Kerman's apartment violated the Fourth Amendment," the court wrote.  *Id.* at 236.

Moreover, this is not just a case where the Defendants did not have any reliable evidence supporting their demand to enter because of an emergency—in this case, the Defendants were given compelling and reliable information that no woman, much less one in need of emergency assistance, was in the Plaintiffs' residence.  The Plaintiffs themselves told the Defendants that neither the woman the Defendants were purportedly concerned about nor Huntly Dantzler, Jr., were in their home.  Despite this first-hand knowledge reporting on the then-existing condition of the property, the Defendants demanded the Plaintiffs stand aside and enter the home,  choosing to rely upon an inherently unreliable report of an anonymous caller as opposed to information provided by a known citizen.  Moreover, even if the officers suspected that a woman in distress was underlined(somewhere) on the property, they did not investigate other areas of the property after the Plaintiffs told them no such woman was in their home.

In similar circumstances the Court of Appeals for the Tenth Circuit ruled that police violated the Fourth Amendment.  In *Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010), police received a 911 call reporting that a child was being beaten at the plaintiff's residence.  Police responded to the residence, confronted the plaintiff at his front door and told him of the report.  The plaintiff informed the police no child was in the home and refused to allow the police to enter and look around. Eventually, the police seized the plaintiff and conducted a warrantless search of

the residence.  In ruling that the trial court had improperly granted the police summary judgment

on the plaintiff's Fourth Amendment claim, the court held as follows:

> Exigent circumstances justifying the officers' search of Lundstrom's house were
> not present. By then, both Lundstrom and Hibner had been handcuffed and
> positioned away from the house, Lundstrom had told the officers no child was at
> the residence, and the neighbor had indicated she might have reported the wrong
> address. Further, the officers still had not come across anything evidencing the
> presence of a child. The record does not indicate the officers encountered anything
> suggesting someone inside Lundstrom's house was in immediate danger or
> seriously injured. Assessing the situation as "prudent, cautious, and trained" police
> officers, we find the officers were not confronted with reasonable grounds to
> believe there was an immediate need to enter Lundstrom's house.

*Lundstrom*, 616 F.3d at 1128.

The Defendants' choice to believe the anonymous caller over the information provided by

the Plaintiffs was unreasonable and inconsistent with precedent which gives presumptive

credibility to information from known citizens such as the Plaintiffs.  *See Illinois v. Gates*, 462

U.S. 213, 233-34 (1983), and *United States v. Blount*, 123 F.3d 831, 836-37 (5th Cir. 1997).  This

presumption of reliability of information from known citizens applies even if the citizen has not

provided reliable information in the past.  *United States v. Darensbourg*, 520 F.2d 985, 988 (5th

Cir. 1975).  Thus, not only did the Defendants have no corroboration for the anonymous caller's

report, they had affirmative and reliable evidence that the woman they were purportedly seeking

was not in the Plaintiff's residence.

In light of this lack of any reliable evidence to believe a woman in need of assistance was

inside the Plaintiffs' home, the Defendants' search of the home and seizure of Plaintiff Huntly

Dantzler in furtherance of that search was unreasonable and violated the Plaintiffs' Fourth

Amendment rights.  None of the cases cited by the Defendants in support of summary judgment

considered circumstances even remotely similar to the instant case.  In *Brigham City*, police

entered the residence to render aid only after personally witnessing an assault and battery and so

the officers had first-hand knowledge that an injured person was in the residence.  In *City and County of San Francisco v. Sheehan*, 135 U.S. 1765, 1774 (2015), the police spoke personally to a mental health worker, a presumptively reliable source, and so had credible evidence that the person in the room they entered might harm herself and needed emergency assistance.  Similarly, *Linicomm v. City of Dallas*, No. 3:14–cv–0777–D, 2015 WL 5664265, at *7 (N.D. Tex. Sept. 25, 2015), involved information that police received during a face-to-face encounter with a citizen and the police had no reason to doubt the reliability of that information.[3]

The Defendants' attempt to support the legality of the search and seizure through the affidavit of a purported expert[4] must be rejected because whether the Defendants' acted on evidence that complies with the Fourth Amendment standards for an intrusion under the emergency aid exemption is a legal question and not one subject to an expert opinion.  The question of whether the facts known to the Defendants were sufficient under Fourth Amendment standards to justify their intrusion is a question of law which is not a proper subject of expert opinion testimony.  *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995), and *Cameron v. City of New York*, 598 F.3d 50, 62, 65 (2d Cir. 2010).  *Cf.*, *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (whether police officer employed unreasonable force in violation of suspect's civil rights was not a proper subject of expert testimony under Fed. R. Evid. 704;

---

[3] The Defendants also cite *United State v. Thompson*, No. 3:11–CR–272–D, 2012 WL 1161609 (N.D. Tex. Apr. 9, 2012), and *United States v. Blount*, 123 F.3d 831 (5th Cir. 1977).  But each of those cases involved the exigent circumstances exception to the warrant requirement, which applies when police have probable cause of criminal activities and there is some emergency circumstance (such as hot pursuit or imminent destruction of evidence) that allows a warrantless intrusion into a residence.  Furthermore, in each of those cases the police had either observed conduct or had corroborated information supporting a conclusion that an urgency existed requiring a warrantless entry.
[4] In his affidavit, Albert Ortiz states  his opinion that given the circumstances facing the Defendants "any reasonable officer could have reasonably believe [sic] exigent circumstances existed and a welfare check of the female was necessary and their duty as peace officers to conduct [sic]." [Dkt. # 21-7, p. 4].  However, Ortiz also notes that the Defendant officers had "limited information," and nowhere in his affidavit accounts for the fact that the report was from an anonymous source even though this is clearly material to the determination of whether the Defendants had reasonable cause under the Fourth Amendment to conduct an emergency aid entry into a home.

reasonableness under the Fourth Amendment is a legal conclusion).  Therefore, to the extent Defendants' proffered expert Albert Ortiz offers an opinion that the Defendants had reasonable cause under the Fourth Amendment to enter and search the Plaintiffs' home, and seize Huntly Dantzler in connection with that search, the opinion must be rejected.  *Accord Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 623-24 (E.D. Pa. 2011), and *Whitmill v. City of Philadelphia*, 29 F. Supp. 2d 241, 246 (E.D. Pa.1998) (police expert was not permitted to offer an opinion on the legality of the plaintiff's seizure because the issue "was a matter for the jury to decide after proper instruction from the court" and the expert testimony "would have usurped the role of the court and the jury").

Because the search was unreasonable and without sufficient factual support, *a fortiori*, the seizure and handcuffing of Plaintiff Huntly Dantzler also violated the Fourth Amendment.  Even assuming law enforcement may employ force and restraints in particular cases in order to conduct a lawful search, where the search is not justified restraining and seizing a person in execution of that search is similarly unjustified and unreasonable.  The Defendants had no right to search the Plaintiffs' house and equally had no right to seize and restrain Huntly Dantzler with handcuffs.

**Qualified Immunity**--The Defendants also argue that notwithstanding any deprivation they inflicted on the Plaintiffs, they should be absolved of any responsibility on the basis of qualified immunity.  Qualified immunity protects public officials from liability under 42 U.S.C. § 1983 unless their conduct violates a clearly established constitutional right.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  Resolution of the defense of qualified immunity requires a two-step analysis.  The first step is determining whether the officers' conduct violated a constitutional right.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The second step is to determine whether the right was "clearly established" at the time of the alleged violation. *Brumfield*, 551 F.3d at 326.

Case 1:15-cv-01084-DAE   Document 24   Filed 02/10/17   Page 13 of 21

For the reasons set forth above, the facts here show that the Defendants violated the Plaintiffs' Fourth Amendment rights. Additionally, it would have been clear under established law to any reasonable officer that they did not have reasonable grounds for a search given the anonymous nature of the tip and the evidence demonstrating that no person in need of aid was inside the Plaintiffs' home. The relevant inquiry in determining whether § 1983 defendants violated "clearly established" law is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). As the Supreme Court has held,

> qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." . . . For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell* [v. *Forsyth,* 472 U. S. 511] 535, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson* v. *Creighton,* 483 U. S. 635, 640 (1987).

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002). *Accord Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005).

Existing case law gives ample and clear notice that bare, uncorroborated anonymous reports are insufficient to justify an emergency-aid entry into a home. In *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999), the court considered the warrantless entry into the plaintiffs' home by a social worker and a police officer based on an anonymous tip of possible child abuse at the home. The anonymous call reported hearing a child yelling, "no, daddy, no," and on another occasion "no, no, no." The court held that such information obtained from an anonymous source was not enough to establish exigent circumstances sufficient to abrogate the warrant requirement for entry into a home. Further, the court denied granting qualified immunity to the officer, saying that a reasonable officer would know that the circumstances did not establish exigent circumstances.

*Huntly Dantzler, et. al. v. Joe Hindman, et al.*                                    Civil Action No. 1:15-CV-1084-LY
Plaintiffs' Response in Opposition to Motion for Summary Judgment                          Page 13

Similarly, in *Fernandez v. Sacco*, 2012 WL 6102136 (E.D. NY 2012), an anonymous 911 call reporting a possible domestic disturbance at plaintiffs' home led police to the plaintiff's home. The officers dispatched to the scene knocked on the door and plaintiff answered with redness and swelling on his neck, face and knuckles, and some slight blood on his knuckles. The officers entered the home without a warrant and searched purportedly to make sure no one in the house was harmed. Plaintiffs later brought suit under 42 U.S.C. § 1983. The court cited *Kerman* and concluded that no exigent circumstances existed to allow for the warrantless entry. The court further denied the officers' motion for summary judgment based on qualified immunity. *Id*. at *9. And in *Lundstrom*, 610 F.3d at 1126, 1129, the court held that the police violated clearly established law by seizing the plaintiff and conducting a warrantless search of his residence on the basis of an unsubstantiated report of an emergency that was refuted by other information obtained by the police.

It is beyond question that the Defendants' demand to search the Plaintiffs' home, which they eventually carried out after the employment of physical force against Plaintiff Huntly Dantzler, was unreasonable and violated the Plaintiffs' Fourth Amendment rights.   Not only was the uncorroborated anonymous report itself insufficient to support the Defendants' actions, but the Defendants were told by the Plaintiffs that the persons Defendant were looking for were not inside their home.   As it turns out, the anonymous report <u>was</u> malicious and an attempt to harass the Plaintiffs' son, an attempt that was successful because of the Defendants' failure to comply with the most rudimentary standards imposed by the Fourth Amendment.   As the Court warned in *J.L.*, 529 U.S. at 273, a bare anonymous report must not be relied upon by police for conducting search and seizures because this would "enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call

falsely reporting" criminal activity or an emergency.   The Defendants failed to heed this fundamental constitutional principle and in doing so deprived the Plaintiffs' of their Fourth Amendment rights.

**III.    PLAINTIFFS' EXCESSIVE FORCE CLAIM**--The Plaintiffs also assert a claim against the Defendants for employing excessive force in seizing Plaintiff Huntly Dantzler, thereby depriving Huntly Dantzler of his Fourth Amendment rights [Dkt. # 1, ¶ 45].  A seizure of a person which is accompanied by the employment of excessive force implicates the Fourth Amendment's proscription against unreasonable seizures.  *Peterson v. City of Fort Worth*, 588 F.3d 838, 845 (5th Cir. 2009).  In their motion for summary judgment on this claim, the Defendants acknowledge that the elements of an excessive force claim are (1) an injury, (2) which resulted directly from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable.  *Baeza v. Becker*, No. 14-cv-659, 2015 WL 6127190, at *7 (W.D. Tex.  Oct. 15, 2015).

Nothing in that motion contests that Plaintiff Huntly Dantzler sustained the kind of injury required to maintain an excessive force claim.  As stated in his affidavit and supported by photographs of his wrists taken just after the incident, Huntly Dantzler suffered severe injuries to his wrists as a result of the actions of the Defendants that caused profuse bleeding (Plaintiff's Exh. A, pp. 4-6 and attached photographs).  Indeed, the Defendants admit that the injuries Huntly Dantzler suffered were so severe that they called Emergency Medical Services to the scene to provide assistance [Dkt. # 21, p. 3].   Clearly, there is no factual dispute that Huntly Dantzler suffered a significant injury that was more than *de minimis*.  *Baeza*, 2015 WL 6127190, at *7.

Furthermore, the facts and circumstances of record in this case would allow a fact-finder to conclude that excessive and unreasonable force was employed against Huntly Dantzler in the course of his seizure by the Defendants.  Excessive force claims are necessarily fact-intensive;

whether the force used is "excessive" or "unreasonable" depends on the facts, circumstances and context of each particular case. *Id.* at *8. Factors that are pertinent to the inquiry of whether force was excessive and unreasonable include (1) the severity of the crime at issue, (2) whether the person was armed, (3) whether the person posed an immediate threat to the safety of the officers or public, (4) whether the person resisted the seizure, (5) whether more than one person was involved, and (6) whether other dangerous circumstances existed. *Goldman v. Williams*, 101 F. Supp. 3d 620, 648 (S.D. Tex. 2015) (citing *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

When viewed in a light most favorable to the Plaintiffs, there is enough evidence here to sustain their excessive force claim as against the Defendants' summary judgment motion. It must be stressed that Huntly Dantzler was not suspected of a crime at the time he was seized and handcuffed by the Defendants; he was at his home and had simply asserted his rights under the Fourth Amendment. The sole basis for the Defendants seizing and handcuffing Huntly Dantzler was to prevent him from interfering with their demand that they be allowed to search his home. The Defendants had no reason to believe Huntly Dantzler was armed or that he would take any aggressive action against the Defendants. Indeed, the evidence shows that Huntly Dantzler peaceably submitted to the handcuffing and did not struggle with the Defendants as they did so.

Even though the sole purpose of seizing and handcuffing Huntly Dantzler was to prevent him from interfering with a search of the home, Defendant Westbrook grabbed Huntly Dantzler and eventually threw him to the ground as Huntly Dantzler was <u>walking away from the officers and the front door of his home</u>. Huntly Dantzler's conduct in moving away from the officers and his home posed no threat whatsoever to either of the Defendants nor was it an action indicating an attempt to interfere with the Defendants' plan to enter and search the Plaintiffs' residence. Defendant Westbrook's decision to grab and eventually throw Huntly Dantzler to the ground was

a gratuitous display of power and authority without any justification.  If, as courts have held, "the need for force determines how much force is constitutionally permissible," *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008), the force Defendant Westbrook employed was clearly excessive because it was unnecessary for any legitimate law enforcement purpose.

That summary judgment on the excessive force claim is improper in light of these circumstances is supported by several cases.  For example, in *Peterson v. City of Fort Worth*, *supra*, the court reversed the trial court's grant of summary judgment to police on an excessive force claim where the facts indicated that a police officer kneed the plaintiff in his thigh while attempting to arrest the plaintiff.  Although the evidence showed that the plaintiff put up a struggle against being arrested, the court stressed that the evidence showed the knee strike occurred <u>after</u> the plaintiff had been handcuffed.  "[T]he evidence supporting the reasonableness of the police response is clearly disputed concerning whether continuing force in the form of a knee strike was justifiable *after* Peterson had been handcuffed."  *Peterson*, 588 F.3d at 847.  In the instant case, whether it was reasonable for Defendant Westbrook to grab and then throw Huntly Dantzler to the ground is similarly disputed given that Huntly Dantzler was handcuffed, was not taking any action to interfere with the Defendants' search of his home, and did not take any aggressive action toward Defendant Westbrook.

That Huntly Dantzler's actions in pulling away from Defendant Westbrook did not justify the force employed is supported by the decision in *Chacon v. Copeland*, No. 12-CA-226, 2015 WL 2018937 (W.D. Tex.  Apr. 30, 2015).  The court there upheld a jury verdict[5] on an excessive force claim where police investigating a report of a man with a gun eventually grabbed the

---

[5] The Court of Appeals for the Fifth Circuit had previously ruled in the case that the police were not entitled to summary judgment on their claim of qualified immunity.  *Chacon v. Copeland*, 577 Fed. Appx. 355 (5th Cir. 2014).

defendant, threw him to the ground and shot him with a Taser several times. In the course of trying to subdue the plaintiff, the plaintiff had pulled away from one of the officers and shoved the officer off of him.   The defendants alleged that these actions showed that the plaintiff was resisting and justified the force employed on him.   But the court rejected this argument, ruling as follows:

> As the Fifth Circuit noted, "[t]he seriousness of Chacon's shove, and whether a finder of fact could conclude that the shove was not active resistance, or was disproportionately minor in relation to the severity of force used by the officers, were fact questions not resolvable by the video and properly put to a trier of fact.

*Chacon*, 2015 WL 2018937 at *6 (quoting *Chacon v. Copeland*, 577 Fed. Appx. at 362).   Similarly, Huntly Dantzler's mere pulling away from Defendant Westbrook should not be deemed to render Defendant Westbrook's actions in response reasonable and not excessive as a matter of law.   That question may not be decided on summary judgment.

Although the Defendants' offer the expert opinion of Albert Ortiz to support their claim that they did not employ unreasonable or excessive force in violation the Fourth Amendment, an opinion on that issue is barred by Fed. R. Evid. 704.   Thus, in *United States v. Williams*, *supra*, a police officer charged with violating the Fourth Amendment rights of a fleeing suspect by shooting the suspect challenged the admission of testimony by other police officers that the shooting was unreasonable.   The court ruled that

> [t]he [trial] court erred under rule 704(a) by allowing the officers' testimony about the reasonableness of the shooting. Rule 704(a) "does not allow a witness to give legal conclusions." [United States v. Izydore, 167 F.3d 213, 218 (5th Cir.1999)]. *See* 3 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 704.02[4] (Matthew Bender 2002). Reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion. *See, e.g.,* United States v. Chavez, 281 F.3d 479, 483 (5th Cir.2002).

*Williams*, 343 F.3d at 435.  To the extent Ortiz attempts to offer his opinion that the force employed on Huntly Dantzler was reasonable under the Fourth Amendment, that opinion must be rejected and may not be grounds for granting the Defendants' summary judgment motion.

**Qualified Immunity--**The Defendants' claim that they are entitled to qualified immunity on the excessive force claims also must be rejected.  Again, the test is whether, in light of preexisting law, it was sufficiently clear that a reasonable official would have understood that what he is doing violates the plaintiff's right.  *Hope*, 536 U.S. at 739.  In a proper case, the *Graham v. Connor*, 490 U.S. 386 (1989), excessive force factors themselves can clearly establish the answer even without a body of relevant case law.  *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016).

In this case, each of the factors weighs heavily against the application of any force against Huntly Dantzler.  Huntly was not suspected of any criminal activity whatsoever, must less a dangerous crime.  His only offense was standing by his Fourth Amendment rights.  Huntly was not armed and at the time Defendant Westbrook employed force upon him he was handcuffed and could not have obtained or used a weapon.  Because he was restrained he posed no threat to anyone. Huntly did not resist the seizure; the videos of the incident demonstrate that he submitted peacefully to the seizure and handcuffing by the Defendants.  Although he did pull away from Defendant Westbrook when Westbrook tried to physically enforce his pointless demand that Huntly stay where he was, Huntly's action was manifestly not aggressive, done simply to get Westbrook's hands off of him, and resulted solely from Westbrook's unnecessary application of force.  As demonstrated by the ruling in *Chacon*, 2015 WL 2018937 at *6 (quoting *Chacon v. Copeland*, 577 Fed. Appx. at 362), this pulling away does not justify the force employed by Defendant Westbrook.  Finally, there were no other persons involved here who posed a threat to the Defendants or any other circumstance that made the situation dangerous for the Defendants.

Because all the *Graham* factors weigh against the employment of force, this Court should, as have numerous other courts under similar circumstances, reject the Defendants claim that they are entitled to summary judgment on the basis of qualified immunity.  *See Cooper*, 844 F.3d at525-26 (officer who used police dog on unarmed drunk driving suspect who offered no serious resistance to being taken into custody was not protected by qualified immunity from excessive force claim), *Bush*, 513 F.3d at 502 (officer who slammed woman's head onto car while arresting her for minor battery did not demonstrate entitlement to qualified immunity where, under woman's version of facts, she was not resisting arrest at the time the force was employed), and *Chacon*, 2015 WL 2018937 at \*6.

## CONCLUSION

For the reasons set forth above, the Defendants have not demonstrated that the undisputed facts in this case show either (1) that they did not violate the Plaintiffs' Fourth Amendment rights or (2) that the Defendants did not violate the "clearly established" constitutional rights of the Plaintiffs.  Therefore, the Defendants' motion for summary judgment under Fed. R. Civ. P. 56 on the Plaintiffs' claims under 42 U.S.C. § 1983 should be denied.

<div style="margin-left:40%">

Respectfully submitted,

Jerri Lynn Ward
Garlo Ward, P.C.
907 Ranch Road 620 S., Ste. 101
Lakeway, TX 78734
Tel: 512.302.1103
Fax: 512.302.5236
Participating Attorney for
The Rutherford Institute

</div>

By:      */s/ Jerri Lynn Ward*
         Jerri Lynn Ward
         **Attorney in Charge**
         State Bar No. 20844200
         Email:jward@garloward.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February 2017, I electronically filed the foregoing Plaintiffs' *Response to Defendants' Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF System. Notification will be forwarded as follows:

Law Offices of Charles S. Frigerio
Riverview Towers
1111 Soledad,
Suite, 840
San Antonio, Texas 78205
(210) 271-7877
(210) 271-0602

         */s/ Jerri Lynn Ward*
         Jerri Lynn Ward